# APPENDIX B.

Excerpts from the Servicing Agreement for New Century Home Equity Loan Trust 2004-2, Article III

================================================================================

NEW CENTURY MORTGAGE CORPORATION,
as Master Servicer,

NEW CENTURY HOME EQUITY LOAN TRUST 2004-2,
as Issuer

and

DEUTSCHE BANK NATIONAL TRUST COMPANY,
as Indenture Trustee,

---------------------------------------

SERVICING AGREEMENT

Dated as of June 29, 2004

---------------------------------------

Mortgage Loans

New Century Home Equity Loan Trust 2004-2

--------------------------------------------------------------------------------

TABLE OF CONTENTS

ARTICLE I

DEFINITIONS

| | | |
|---|---|---|
| Section 1.01. | DEFINITIONS | 2 |
| Section 1.02. | OTHER DEFINITIONAL PROVISIONS | 2 |

ARTICLE II

REPRESENTATIONS AND WARRANTIES

| | | |
|---|---|---|
| Section 2.01. | REPRESENTATIONS AND WARRANTIES REGARDING THE MASTER SERVICER | 3 |
| Section 2.02. | EXISTENCE | 5 |
| Section 2.03. | ENFORCEMENT OF REPRESENTATIONS AND WARRANTIES | 5 |

ARTICLE III

ADMINISTRATION AND SERVICING OF MORTGAGE LOANS

| | | |
|---|---|---|
| Section 3.01. | MASTER SERVICER TO ACT AS MASTER SERVICER | 8 |
| Section 3.02. | SUB-SERVICING AGREEMENTS BETWEEN MASTER SERVICER AND SUB-SERVICERS | 10 |
| Section 3.03. | SUCCESSOR SUB-SERVICERS | 11 |
| Section 3.04. | LIABILITY OF THE MASTER SERVICER | 11 |
| Section 3.05. | NO CONTRACTUAL RELATIONSHIP BETWEEN SUB-SERVICERS, THE INDENTURE TRUSTEE OR THE NOTEHOLDERS | 12 |
| Section 3.06. | ASSUMPTION OR TERMINATION OF SUB-SERVICING AGREEMENTS BY THE INDENTURE TRUSTEE | 12 |
| Section 3.07. | COLLECTION OF CERTAIN MORTGAGE LOAN PAYMENTS | 13 |
| Section 3.08. | SUB-SERVICING ACCOUNTS | 13 |
| Section 3.09. | COLLECTION OF TAXES, ASSESSMENTS AND SIMILAR ITEMS; SERVICING ACCOUNTS | 13 |
| Section 3.10. | COLLECTION ACCOUNT AND PAYMENT ACCOUNT | 14 |
| Section 3.11. | WITHDRAWALS FROM THE COLLECTION ACCOUNT AND PAYMENT ACCOUNT | 17 |
| Section 3.12. | INVESTMENT OF FUNDS IN THE COLLECTION ACCOUNT AND THE PAYMENT ACCOUNT | 18 |
| Section 3.13. | [RESERVED] | 19 |
| Section 3.14. | MAINTENANCE OF HAZARD INSURANCE AND ERRORS AND OMISSIONS AND FIDELITY COVERAGE | 20 |
| Section 3.15. | ENFORCEMENT OF DUE-ON-SALE CLAUSES; ASSUMPTION AGREEMENTS | 21 |
| Section 3.16. | REALIZATION UPON DEFAULTED MORTGAGE LOANS | 22 |
| Section 3.17. | TRUSTEE TO COOPERATE; RELEASE OF MORTGAGE FILES | 24 |
| Section 3.18. | SERVICING COMPENSATION | 25 |
| Section 3.19. | REPORTS TO THE INDENTURE TRUSTEE AND OTHERS; COLLECTION ACCOUNT STATEMENTS | 26 |

Section 3.20.    STATEMENT AS TO COMPLIANCE..............................26
Section 3.21.    INDEPENDENT PUBLIC ACCOUNTANTS' SERVICING REPORT.....27
Section 3.22.    ACCESS TO CERTAIN DOCUMENTATION.......................27
Section 3.23.    TITLE, MANAGEMENT AND DISPOSITION OF REO PROPERTY....27
Section 3.24.    OBLIGATIONS OF THE MASTER SERVICER IN RESPECT OF
                 PREPAYMENT INTEREST SHORTFALLS........................30
Section 3.25.    OBLIGATIONS OF THE MASTER SERVICER IN RESPECT OF
                 MORTGAGE RATES AND MONTHLY PAYMENTS...................30
Section 3.26.    ADVANCE FACILITY......................................30

                             ARTICLE IV

                        SERVICING CERTIFICATE

Section 4.01.    REMITTANCE REPORTS AND P&I ADVANCES...................32
Section 4.02.    EXCHANGE ACT REPORTING................................33

                             ARTICLE V

                        THE MASTER SERVICER

Section 5.01.    LIABILITY OF THE MASTER SERVICER......................36
Section 5.02.    MERGER OR CONSOLIDATION OF OR ASSUMPTION OF THE
                 OBLIGATIONS OF THE MASTER SERVICER....................36
Section 5.03.    LIMITATION ON LIABILITY OF THE MASTER SERVICER AND
                 OTHERS................................................36
Section 5.04.    MASTER SERVICER NOT TO RESIGN.........................37
Section 5.05.    DELEGATION OF DUTIES..................................37
Section 5.06.    RIGHTS OF THE ISSUER IN RESPECT OF THE MASTER
                 SERVICER..............................................37
Section 5.07.    INDEMNIFICATION.......................................38

                             ARTICLE VI

                              DEFAULT

Section 6.01.    MASTER SERVICER EVENTS OF DEFAULT.....................40
Section 6.02.    INDENTURE TRUSTEE TO ACT; APPOINTMENT OF SUCCESSOR...42
Section 6.03.    NOTIFICATION TO NOTEHOLDERS...........................43
Section 6.04.    WAIVER OF MASTER SERVICER EVENTS OF DEFAULT...........43

                             ARTICLE VII

                       MISCELLANEOUS PROVISIONS

Section 7.01.    AMENDMENT.............................................44
Section 7.02.    GOVERNING LAW.........................................44
Section 7.03.    NOTICES...............................................44
Section 7.04.    SEVERABILITY OF PROVISIONS............................45
Section 7.05.    THIRD-PARTY BENEFICIARIES.............................45
Section 7.06.    COUNTERPARTS..........................................45
Section 7.07.    EFFECT OF HEADINGS AND TABLE OF CONTENTS..............45
Section 7.09.    NO PETITION...........................................46
Section 7.10.    NO RECOURSE...........................................46

Section 7.11.    INDENTURE TRUSTEE RIGHTS..............................46

                             ARTICLE VIII

                 DUTIES OF THE MASTER SERVICER AS ADMINISTRATOR

Section 8.01.    ADMINISTRATIVE DUTIES.................................47
Section 8.02.    RECORDS...............................................48
Section 8.03.    ADDITIONAL INFORMATION TO BE FURNISHED................48
Section 8.04.    NO RECOURSE TO OWNER TRUSTEE..........................49

EXHIBITS

Exhibit A        Mortgage Loan Schedule
Exhibit B        Form of Request for Release
Exhibit C-1      Form of Certification to Be Provided by the Depositor with Form 10-K
Exhibit C-2      Form of Certification to Be Provided to the Depositor by the Indenture Trustee
Exhibit D        Form of Officer's Certificate Regarding Annual Statement of Compliance

ARTICLE III

ADMINISTRATION AND SERVICING OF MORTGAGE LOANS

Section 3.01. MASTER SERVICER TO ACT AS MASTER SERVICER.

The Master Servicer shall service and administer the Mortgage Loans on behalf of the Trust Estate and in the best interests of and for the benefit of the Noteholders (as determined by the Master Servicer in its reasonable judgment) in accordance with the terms of this Servicing Agreement and the respective Mortgage Loans and, to the extent consistent with such terms, in the same manner in which it services and administers similar mortgage loans for its own portfolio, giving due consideration to customary and usual standards of practice of mortgage lenders and loan servicers administering similar mortgage loans but without regard to:

(i) any relationship that the Master Servicer, any Sub-Servicer or any Affiliate of the Master Servicer or any Sub-Servicer may have with the related Mortgagor;

(ii) the ownership or non-ownership of any Note by the Master Servicer or any Affiliate of the Master Servicer;

(iii) the Master Servicer's obligation to make P&I Advances or Servicing Advances; or

(iv) the Master Servicer's or any Sub-Servicer's right to receive compensation for its services hereunder or with respect to any particular transaction.

To the extent consistent with the foregoing, the Master Servicer (a) shall seek to maximize the timely and complete recovery of principal and interest on the Mortgage Notes and (b) shall waive (or permit a Sub-Servicer to waive) a Prepayment Charge only under the following circumstances: (i) such waiver is standard and customary in servicing similar Mortgage Loans and (ii) either (A) such waiver would, in the reasonable judgement of the Master Servicer, maximize recovery of total proceeds taking into account the value of such Prepayment Charge and the related Mortgage Loan and, if such waiver is made in connection with a refinancing of the related Mortgage Loan, such refinancing is related to a default or a reasonably foreseeable default or (B) such waiver is made in connection with a refinancing of the related Mortgage Loan unrelated to a default or a reasonably foreseeable default where (x) the related mortgagor has stated to the Master Servicer or an applicable Sub-Servicer an intention to refinance the related Mortgage Loan and (y) the Master Servicer has concluded in its reasonable judgement that the waiver of such Prepayment Charge would induce such mortgagor to refinance with the Master Servicer or (iii) collection of the related Prepayment Charge would violate applicable law. If a Prepayment Charge is waived as permitted by meeting both of the standards described in clauses (i) and (ii)(B) above, then the Master Servicer is required to pay the amount of such waived Prepayment Charge, for the benefit of the Holders of the Notes, by depositing such amount into the Collection Account together with and at the time that the amount prepaid on the related Mortgage Loan is required to be deposited into the Collection Account.

Subject only to the above-described servicing standards and the terms of this Servicing Agreement and of the respective Mortgage Loans, the Master Servicer shall have full power and authority, acting alone or through Sub-Servicers as provided in Section 3.02, to do or cause to be

done any and all things in connection with such servicing and administration which it may deem necessary or desirable. Without limiting the generality of the foregoing, the Master Servicer in its own name or in the name of a Sub-Servicer is hereby authorized and empowered by the Indenture Trustee when the Master Servicer believes it appropriate in its best judgment in accordance with the servicing standards set forth above, to execute and deliver, on behalf of the Trust Estate, the Issuer, the Noteholders and the Indenture Trustee or any of them, and upon written notice to the Indenture Trustee, any and all instruments of satisfaction or cancellation, or of partial or full release or discharge, and all other comparable instruments, with respect to the Mortgage Loans and the Mortgaged Properties and to institute foreclosure proceedings or obtain a deed-in-lieu of foreclosure so as to convert the ownership of such properties, and to hold or cause to be held title to such properties, on behalf of the Indenture Trustee and Noteholders. The Master Servicer shall service and administer the Mortgage Loans in accordance with applicable state and federal law and shall provide to the Mortgagors any reports required to be provided to them thereby. The Master Servicer shall also comply in the performance of this Servicing Agreement with all reasonable rules and requirements of each insurer under any standard hazard insurance policy. Subject to Section 3.17, the Issuer and the Indenture Trustee shall execute, at the written request of the Master Servicer, and furnish to the Master Servicer and any Sub-Servicer any special or limited powers of attorney and other documents necessary or appropriate to enable the Master Servicer or any Sub-Servicer to carry out their servicing and administrative duties hereunder and the Issuer and the Indenture Trustee shall not be liable for the actions of the Master Servicer or any Sub-Servicers under such powers of attorney.

Subject to Section 3.09 hereof, in accordance with the standards of the preceding paragraph, the Master Servicer shall advance or cause to be advanced funds as necessary for the purpose of effecting the timely payment of taxes and assessments on the Mortgaged Properties in a manner and at a time that avoids the loss of the Mortgaged Property due to a tax sale or the foreclosure as a result of a tax lien, which advances shall be Servicing Advances reimbursable in the first instance from related collections from the Mortgagors pursuant to Section 3.09, and further as provided in Section 3.11. Any cost incurred by the Master Servicer or by Sub-Servicers in effecting the timely payment of taxes and assessments on a Mortgaged Property shall not, for the purpose of calculating payments to Noteholders, be added to the unpaid Stated Principal Balance of the related Mortgage Loan, notwithstanding that the terms of such Mortgage Loan so permit.

Notwithstanding anything in this Servicing Agreement to the contrary, the Master Servicer may not make any future advances with respect to a Mortgage Loan (except as provided in Section 4.01) and the Master Servicer shall not permit any modification with respect to any Mortgage Loan that would change the Mortgage Rate, reduce or increase the principal balance (except for reductions resulting from actual payments of principal) or change the final maturity date on such Mortgage Loan (unless, as provided in Section 3.07, the Mortgagor is in default with respect to the Mortgage Loan or such default is, in the judgment of the Master Servicer, reasonably foreseeable).

The Master Servicer may delegate its responsibilities under this Servicing Agreement; provided, however, that no such delegation shall

release the Master Servicer from the responsibilities or liabilities arising under this Servicing Agreement.

Section 3.07. COLLECTION OF CERTAIN MORTGAGE LOAN PAYMENTS.

The Master Servicer shall make reasonable efforts to collect all payments called for under the terms and provisions of the Mortgage Loans, and shall, to the extent such procedures shall be consistent with this Servicing Agreement and the terms and provisions of any applicable insurance policies, follow such collection procedures as it would follow with respect to mortgage loans comparable to the Mortgage Loans and held for its own account. Consistent with the foregoing, the Master Servicer may in its discretion (i) waive any late payment charge or, if applicable, any penalty interest, or (ii) extend the due dates for the Monthly Payments due on a Mortgage Note for a period of not greater than 180 days; provided, however, that any extension pursuant to clause (ii) above shall not affect the amortization schedule of any Mortgage Loan for purposes of any computation hereunder, except as provided below. In the event of any such arrangement pursuant to clause (ii) above, the Master Servicer shall make timely advances on such Mortgage Loan during such extension pursuant to Section 4.01 and in accordance with the amortization schedule of such Mortgage Loan without modification thereof by reason of such arrangement. Notwithstanding the foregoing, in the event that any Mortgage Loan is in default or, in the judgment of the Master Servicer, such default is reasonably foreseeable, the Master Servicer, consistent with the standards set forth in Section 3.01, may also waive, modify or vary any term of such Mortgage Loan (including modifications that would change the Mortgage Rate, forgive the payment of principal or interest or extend the final maturity date of such Mortgage Loan), accept payment from the related Mortgagor of an amount less than the Stated Principal Balance in final satisfaction of such Mortgage Loan (such payment, a "Short Pay-off"), or consent to the postponement of strict compliance with any such term or otherwise grant indulgence to any Mortgagor.

Section 3.15. ENFORCEMENT OF DUE-ON-SALE CLAUSES; ASSUMPTION AGREEMENTS.

The Master Servicer will, to the extent it has knowledge of any conveyance or prospective conveyance of any Mortgaged Property by any Mortgagor (whether by absolute conveyance or by contract of sale, and whether or not the Mortgagor remains or is to remain liable under the Mortgage Note and/or the Mortgage), exercise its rights to accelerate the maturity of such Mortgage Loan under the "due-on-sale" clause, if any, applicable thereto; provided, however, that the Master Servicer shall not be required to take such action if in its sole business judgment the Master Servicer believes it is not in the best interests of the Trust Estate and shall not exercise any such rights if prohibited by law from doing so. If the Master Servicer reasonably believes it is unable under applicable law to enforce such "due-on-sale" clause, or if any of the other conditions set forth in the proviso to the preceding sentence apply, the Master Servicer will enter into an assumption and modification agreement from or with the person to whom such property has been conveyed or is proposed to be conveyed, pursuant to which such person becomes liable under the Mortgage Note and, to the extent permitted by applicable

state law, the Mortgagor remains liable thereon. The Master Servicer is also authorized to enter into a substitution of liability agreement with such person, pursuant to which the original Mortgagor is released from liability and such person is substituted as the Mortgagor and becomes liable under the Mortgage Note, provided that no such substitution shall be effective unless such person satisfies the underwriting criteria of the Originator and has a credit risk rating at least equal to that of the original Mortgagor. In connection with any assumption or substitution, the Master Servicer shall apply the Originator's underwriting standards and follow such practices and procedures as shall be normal and usual in its general mortgage servicing activities and as it applies to other mortgage loans owned solely by it. The Master Servicer shall not take or enter into any assumption and modification agreement, however, unless (to the extent practicable in the circumstances) it shall have received confirmation, in writing, of the continued effectiveness of any applicable hazard insurance policy. Any fee collected by the Master Servicer in respect of an assumption, modification or substitution of liability agreement shall be retained by the Master Servicer as additional servicing compensation. In connection with any such assumption, no material term of the Mortgage Note (including but not limited to the related Mortgage Rate and the amount of the Monthly Payment) may be amended or modified, except as otherwise required pursuant to the terms thereof. The Master Servicer shall notify the Indenture Trustee that any such substitution, modification or assumption agreement has been completed by forwarding to the Indenture Trustee the executed original of such substitution, modification or assumption agreement, which document shall be added to the related Mortgage File and shall, for all purposes, be considered a part of such Mortgage File to the same extent as all other documents and instruments constituting a part thereof.

Notwithstanding the foregoing paragraph or any other provision of this Servicing Agreement, the Master Servicer shall not be deemed to be in default, breach or any other violation of its obligations hereunder by reason of any assumption of a Mortgage Loan by operation of law or by the terms of the Mortgage Note or any assumption which the Master Servicer may be restricted by law from preventing, for any reason whatever. For purposes of this Section 3.15, the term "assumption" is deemed to also include a sale (of the Mortgaged Property) subject to the Mortgage that is not accompanied by an assumption or substitution of liability agreement.

Section 3.16. REALIZATION UPON DEFAULTED MORTGAGE LOANS.

(a) The Master Servicer shall exercise its discretion, consistent with customary servicing procedures and the terms of this Servicing Agreement, with respect to the enforcement and servicing of defaulted Mortgage Loans in such manner as will maximize the receipt of principal and interest with respect thereto, including but not limited to the modification of such Mortgage Loan, or foreclosure upon the related Mortgaged Property and disposition thereof.

In furtherance of the foregoing, the Master Servicer shall use its best efforts, consistent with Accepted Servicing Practices, to foreclose upon or otherwise comparably convert the ownership of properties securing such of the Mortgage Loans as come into and continue in default and as to which no satisfactory arrangements can be made for collection of delinquent payments pursuant to Section 3.07. The Master Servicer shall be

responsible for all costs and expenses incurred by it in any such proceedings; provided, however, that such costs and expenses will be recoverable as Servicing Advances by the Master Servicer as contemplated in Section 3.11 and Section 3.23. The foregoing is subject to the provision that, in any case in which Mortgaged Property shall have suffered damage from an Uninsured Cause, the Master Servicer shall not be required to expend its own funds toward the restoration of such property unless it shall determine in its discretion that such restoration will increase the proceeds of liquidation of the related Mortgage Loan after reimbursement to itself for such expenses.

(b) Notwithstanding the foregoing provisions of this Section 3.16 or any other provision of this Servicing Agreement, with respect to any Mortgage Loan as to which the Master Servicer has received actual notice of, or has actual knowledge of, the presence of any toxic or hazardous substance on the related Mortgaged Property, the Master Servicer shall not, on behalf of the Issuer either (i) obtain title to such Mortgaged Property as a result of or in lieu of foreclosure or otherwise, or (ii) otherwise acquire possession of, or take any other action with respect to, such Mortgaged Property, if, as a result of any such action, the Indenture Trustee, the Trust Estate or the Noteholders would be considered to hold title to, to be a "mortgagee-in-possession" of, or to be an "owner" or "operator" of such Mortgaged Property within the meaning of the Comprehensive Environmental Response, Compensation and Liability Act of 1980, as amended from time to time, or any comparable law, unless the Master Servicer has also previously determined, based on its reasonable judgment and a report prepared by an Independent Person who regularly conducts environmental audits using customary industry standards, that:

(1) such Mortgaged Property is in compliance with applicable environmental laws or, if not, that it would be in the best economic interest of the Trust Estate to take such actions as are necessary to bring the Mortgaged Property into compliance therewith; and

(2) there are no circumstances present at such Mortgaged Property relating to the use, management or disposal of any hazardous substances, hazardous materials, hazardous wastes, or petroleum-based materials for which investigation, testing, monitoring, containment, clean-up or remediation could be required under any federal, state or local law or regulation, or that if any such materials are present for which such action could be required, that it would be in the best economic interest of the Trust Estate to take such actions with respect to the affected Mortgaged Property.

The cost of the environmental audit report contemplated by this Section 3.16 shall be advanced by the Master Servicer, subject to the Master Servicer's right to be reimbursed therefor from the Collection Account as provided in Section 3.11(a)(ix), such right of reimbursement being prior to the rights of Noteholders to receive any amount in the Collection Account received in respect of the affected Mortgage Loan or other Mortgage Loans.

If the Master Servicer determines, as described above, that it is in the best economic interest of the Trust Estate to take such actions as are necessary to bring any such Mortgaged Property into compliance with applicable environmental laws, or to take such action with respect to the containment, clean-up or remediation of hazardous substances, hazardous materials, hazardous wastes or petroleum-based materials affecting any

such Mortgaged Property, then the Master Servicer shall take such action as it deems to be in the best economic interest of the Trust Estate; provided that any amounts disbursed by the Master Servicer pursuant to this Section 3.16(b) shall constitute Servicing Advances, subject to Section 4.01(d). The cost of any such compliance, containment, cleanup or remediation shall be advanced by the Master Servicer, subject to the Master Servicer's right to be reimbursed therefor from the Collection Account as provided in Section 3.11(a)(iii) and (a)(ix), such right of reimbursement being prior to the rights of Noteholders to receive any amount in the Collection Account received in respect of the affected Mortgage Loan or other Mortgage Loans.

(c) The Master Servicer may at its option, on behalf of the Issuer, purchase from the Issuer any Mortgage Loan or related REO Property that is 90 days or more delinquent, which the Master Servicer determines in good faith will otherwise become subject to foreclosure proceedings (evidence of such determination to be delivered in writing to the Indenture Trustee, in form and substance satisfactory to the Indenture Trustee prior to purchase), at a price equal to the Purchase Price; provided, however, that the Master Servicer shall purchase any such Mortgage Loans or related REO Properties on the basis of delinquency, purchasing the most delinquent Mortgage Loans or related REO Properties first. The Purchase Price for any Mortgage Loan or related REO Property purchased hereunder shall be deposited in the Collection Account, and the Indenture Trustee, upon receipt of written certification from the Master Servicer of such deposit, shall release or cause to be released to the Master Servicer the related Mortgage File and the Indenture Trustee shall execute and deliver such instruments of transfer or assignment, in each case without recourse, as the Master Servicer shall furnish and as shall be necessary to vest in the Master Servicer title to any Mortgage Loan or related REO Property released pursuant hereto.

(d) Proceeds received in connection with any Final Recovery Determination, as well as any recovery resulting from a partial collection of Insurance Proceeds, Liquidation Proceeds or Subsequent Recoveries, in respect of any Mortgage Loan, will be applied in the following order of priority: first, to reimburse the Master Servicer or any Sub-Servicer for any related unreimbursed Servicing Advances and P&I Advances, pursuant to Section 3.11(a)(ii) or (a)(iii); second, to accrued and unpaid interest on the Mortgage Loan, to the date of the Final Recovery Determination, or to the Due Date prior to the Payment Date on which such amounts are to be distributed if not in connection with a Final Recovery Determination; and third, as a recovery of principal of the Mortgage Loan. If the amount of the recovery so allocated to interest is less than the full amount of accrued and unpaid interest due on such Mortgage Loan, the amount of such recovery will be allocated by the Master Servicer as follows: first, to unpaid Servicing Fees; and second, to the balance of the interest then due and owing. The portion of the recovery so allocated to unpaid Servicing Fees shall be reimbursed to the Master Servicer or any Sub-Servicer pursuant to Section 3.11(a)(iii).

(e) Furthermore, the Holder of the Certificates will have the option to purchase, at any one time, 1.0% (and in any case, at least 5 Mortgage Loans) of the Mortgage Loans, by aggregate Stated Principal Balance of the Mortgage Loans as of such date, at a purchase price equal to the greater of (A) the aggregate Purchase Price of such Mortgage Loans and (B) the aggregate fair market value of such Mortgage Loans. The Mortgage Loans

that may be purchased by the Holder of the Trust certificates pursuant to this paragraph will be selected by the Master Servicer in its sole discretion. If at any time the Holder of the Certificates exercises such option, it shall immediately notify or cause to be notified the Indenture Trustee by a certification in the form of Exhibit B (which certification shall include a statement to the effect that all amounts required to be deposited in the Collection Account pursuant to Section 3.10 have been or will be so deposited) of a Servicing Officer and shall request delivery to it of the Mortgage File. Upon receipt of such certification and request, the Indenture Trustee shall promptly release the related Mortgage Files to the Holder of the
Trust Certificates.


Section 3.19. REPORTS TO THE INDENTURE TRUSTEE AND OTHERS; COLLECTION ACCOUNT STATEMENTS.

Not later than twenty days after each Payment Date, the Master Servicer shall forward to the Indenture Trustee (upon the Indenture Trustee's request) and the Depositor the most current available bank statement for the Collection Account. Copies of such statement shall be provided by the Indenture Trustee to any Noteholder and to any Person identified to the Indenture Trustee as a prospective transferee of a Note, upon request at the expense of the requesting party, provided such statement is delivered by the Master Servicer to the Indenture Trustee.
In addition, on each Payment Date, the Master Servicer shall forward to the Rating Agencies and the Indenture Trustee a report setting forth the percentage of Mortgage Loans that are 30 or more days delinquent, in foreclosure, have been converted to REO Properties or have been discharged by reason of bankruptcy.

Section 3.23. TITLE, MANAGEMENT AND DISPOSITION OF REO PROPERTY.
(a) The deed or certificate of sale of any REO Property shall be taken in the name of the Indenture Trustee, or its nominee, in trust for the benefit of the Noteholders.
(b) The Master Servicer shall segregate and hold all funds collected and received in connection with the operation of any REO Property separate and apart from its own funds and general assets and shall establish and maintain, or cause to be established and maintained, with respect to REO Properties, an account held in trust for the Indenture Trustee for the benefit of the Noteholders (the "REO Account"), which shall be an Eligible Account. The Master Servicer shall be permitted to allow the Collection Account to serve as the REO Account, subject to separate ledgers for each REO Property. The Master Servicer shall be entitled to retain or withdraw any interest income paid on funds deposited in the REO Account.
(c) The Master Servicer shall have the sole discretion to determine whether an immediate sale of an REO Property or continued management of such REO Property is in the best interests of the Noteholders. In furtherance of the foregoing, the Master Servicer shall have full power and authority, subject only to the specific requirements and prohibitions of this Servicing Agreement, to do any and all things in connection with any REO Property as are consistent with the manner in which the Master Servicer manages and operates similar property owned by the Master Servicer or any of its Affiliates, all on such terms and for such period

as the Master Servicer deems to be in the best interests of Noteholders. In connection therewith, the Master Servicer shall deposit, or cause to be deposited in the clearing account in which it customarily deposits payments and collections on mortgage loans in connection with its mortgage loan servicing activities on a daily basis, and in no event more than one Business Day after the Master Servicer's receipt thereof, and shall thereafter deposit in the REO Account, in no event more than two Business Days after the Master Servicer's receipt thereof, all revenues received by it with respect to an REO Property and shall withdraw therefrom funds necessary for the proper operation, management and maintenance of such REO Property including, without limitation:

(i) all insurance premiums due and payable in respect of such REO Property;

(ii) all real estate taxes and assessments in respect of such REO Property that may result in the imposition of a lien thereon; and

(iii) all costs and expenses necessary to maintain such REO Property.

To the extent that amounts on deposit in the REO Account with respect to an REO Property are insufficient for the purposes set forth in clauses (i) through (iii) above with respect to such REO Property, the Master Servicer shall advance from its own funds such amount as is necessary for such purposes if, but only if, the Master Servicer would make such advances if the Master Servicer owned the REO Property and if in the Master Servicer's judgment, the payment of such amounts will be recoverable from the rental or sale of the REO Property.

The Master Servicer may contract with any Independent for the operation and management of any REO Property, provided that:

(i) the terms and conditions of any such contract shall not be inconsistent herewith;

(ii) any such contract shall require, or shall be administered to require, that the Independent contractor pay all costs and expenses incurred in connection with the operation and management of such REO Property, including those listed above and remit all related revenues (net of such costs and expenses) to the Master Servicer as soon as practicable, but in no event later than thirty days following the receipt thereof by such Independent contractor;

(iii) none of the provisions of this Section 3.23(c) relating to any such contract or to actions taken through any such Independent contractor shall be deemed to relieve the Master Servicer of any of its duties and obligations to the Indenture Trustee on behalf of the Noteholders with respect to the operation and management of any such REO Property; and

(iv) the Master Servicer shall be obligated with respect thereto to the same extent as if it alone were performing all duties and obligations in connection with the operation and management of such REO Property.

The Master Servicer shall be entitled to enter into any agreement with any Independent contractor performing services for it related to its duties and obligations hereunder for indemnification of the Master Servicer by such Independent contractor, and nothing in this Servicing Agreement shall be deemed to limit or modify such indemnification. The Master Servicer shall be solely liable for all fees owed by it to any such Independent contractor, irrespective of whether the Master Servicer's compensation pursuant to Section 3.18 is sufficient to pay such fees;

provided, however, that to the extent that any payments made by such Independent contractor would constitute Servicing Advances if made by the Master Servicer, such amounts shall be reimbursable as Servicing Advances made by the Master Servicer.

(d) In addition to the withdrawals permitted under Section 3.23(c), the Master Servicer may from time to time make withdrawals from the REO Account for any REO Property: (i) to pay itself or any Sub-Servicer unpaid Servicing Fees in respect of the related Mortgage Loan; and (ii) to reimburse itself or any Sub-Servicer for unreimbursed Servicing Advances and P&I Advances made in respect of such REO Property or the related Mortgage Loan. On the Master Servicer Remittance Date, the Master Servicer shall withdraw from each REO Account maintained by it and deposit into the Payment Account in accordance with Section 3.10(d)(ii), for payment on the related Payment Date in accordance with Section 3.05 of the Indenture, the income from the related REO Property received during the prior calendar month, net of any withdrawals made pursuant to Section 3.23(c) or this Section 3.23(d).

(e) Subject to the time constraints set forth in Section 3.23(a), each REO Disposition shall be carried out by the Master Servicer at such price and upon such terms and conditions as the Master Servicer shall deem necessary or advisable, as shall be normal and usual in its Accepted Servicing Practices.

(f) The proceeds from the REO Disposition, net of any amount required by law to be remitted to the Mortgagor under the related Mortgage Loan and net of any payment or reimbursement to the Master Servicer or any Sub-Servicer as provided above, shall be deposited in the Payment Account in accordance with Section 3.10(d)(ii) on the Master Servicer Remittance Date in the month following the receipt thereof for payment on the related Payment Date in accordance with Section 3.05 of the Indenture. Any REO Disposition shall be for cash only.

Section 3.25. OBLIGATIONS OF THE MASTER SERVICER IN RESPECT OF MORTGAGE RATES AND MONTHLY PAYMENTS.

In the event that a shortfall in any collection on or liability with respect to any Mortgage Loan results from or is attributable to adjustments to Mortgage Rates, Monthly Payments or Stated Principal Balances that were made by the Master Servicer in a manner not consistent with the terms of the related Mortgage Note and this Servicing Agreement, the Master Servicer, upon discovery or receipt of notice thereof, immediately shall deliver to the Indenture Trustee for deposit in the Payment Account from its own funds the amount of any such shortfall and shall indemnify and hold harmless the Trust Estate, the Indenture Trustee, the Depositor and any successor master servicer in respect of any such liability. Such indemnities shall survive the termination or discharge of this Servicing Agreement. Notwithstanding the foregoing, this Section 3.25 shall not limit the ability of the Master Servicer to seek recovery of any such amounts from the related Mortgagor under the terms of the related Mortgage Note, as permitted by law.

Section 3.26. ADVANCE FACILITY.

(a) Either (i) the Master Servicer or (ii) the Indenture Trustee, on behalf of the Trust Estate, with the consent of the Master Servicer, is

hereby authorized to enter into a facility with any Person which provides that such Person (an "Advancing Person") may fund P&I Advances and/or Servicing Advances to the Trust Estate under this Servicing Agreement, although no such facility shall reduce or otherwise affect the Master Servicer's obligation to fund such P&I Advances and/or Servicing Advances. If the Master Servicer enters into such an Advance Facility pursuant to this Section 3.26, upon reasonable request of the Advancing Person, the Indenture Trustee shall execute a letter of acknowledgment, confirming its receipt of notice of the existence of such Advance Facility. If the Indenture Trustee enters into such an Advance Facility pursuant to this Section 3.26, the Master Servicer shall also be a party to such Advance Facility. To the extent that an Advancing Person funds any P&I Advance or any Servicing Advance and the Master Servicer provides the Indenture Trustee with an Officers' Certificate that such Advancing Person is entitled to reimbursement, such Advancing Person shall be entitled to receive reimbursement pursuant to this Servicing Agreement for such amount to the extent provided in Section 3.26(b). Such Officers' Certificate must specify the amount of the reimbursement, the Section of this Servicing Agreement that permits the applicable P&I Advance or Servicing Advance to be reimbursed and the section(s) of the Advance Facility that entitle the Advancing Person to request reimbursement from the Indenture Trustee, rather than the Master Servicer or proof of an Event of Default under the Advance Facility. The Indenture Trustee shall have no duty or liability with respect to any calculation of any reimbursement to be paid to an Advancing Person and shall be entitled to rely without independent investigation on the Advancing Person's notice provided pursuant to this Section 3.26. An Advancing Person whose obligations hereunder are limited to the funding of P&I Advances and/or Servicing Advances shall not be required to meet the qualifications of the Master Servicer or a Sub-Servicer pursuant to Section 3.02 hereof and will not be deemed to be a Sub-Servicer under this Servicing Agreement.

(b) If an advancing facility is entered into, then the Master Servicer shall not be permitted to reimburse itself therefor under Section 3.11(a)(ii), Section 3.11(a)(iii) and Section 3.11(a)(vi) prior to the remittance to the Trust Estate, but instead the Master Servicer shall remit such amounts in accordance with the documentation establishing the Advance Facility to such Advancing Person or to a trustee, agent or custodian (an "Advance Facility Trustee") designated by such Advancing Person. The Indenture Trustee is hereby authorized to pay to the Advancing Person, reimbursements for P&I Advances and Servicing Advances from the Payment Account to the same extent the Master Servicer would have been permitted to reimburse itself for such P&I Advances and/or Servicing Advances in accordance with 3.11(a)(ii), Section 3.11(a)(iii) and Section 3.11(a)(vi), as the case may be, had the Master Servicer itself funded such P&I Advance or Servicing Advance. The Indenture Trustee is hereby authorized to pay directly to the Advancing Person such portion of the Servicing Fee as the parties to any advancing facility agree in writing.

(c) All P&I Advances and Servicing Advances made pursuant to the terms of this Servicing Agreement shall be deemed made and shall be reimbursed on a "first in-first out" (FIFO) basis.

(d) Any amendment to this Section 3.26 or to any other provision of this Servicing Agreement that may be necessary or appropriate to effect the terms of an Advance Facility as described generally in this Section 3.26, including amendments to add provisions relating to a successor

Master Servicer, may be entered into by the Indenture Trustee and the Master Servicer without the consent of any Noteholder, notwithstanding anything to the contrary in this