ROCKY C. TSAI (SBN 221452)
(rocky.tsai@ropesgray.com)
**ROPES & GRAY LLP**
Three Embarcadero Center
San Francisco, CA 94111-4006
Telephone: (415) 315-6300
Facsimile: (415) 315-6350

Attorneys for Plaintiffs Wells Fargo Bank, N.A.,
as Trustee, *et al.*

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN FRANCISCO DIVISION

| | |
|---|---|
| WELLS FARGO BANK, NATIONAL ASSOCIATION, as Trustee, *et al.*<br><br>  Plaintiffs,<br><br>  v.<br><br>CITY OF RICHMOND, CALIFORNIA, a municipality, and MORTGAGE RESOLUTION PARTNERS LLC;<br><br>  Defendants. | Case No. CV-13-3663-CRB<br><br>**DECLARATION OF JOHN C. ERTMAN IN OPPOSITION TO DEFENDANTS' EX PARTE MOTION TO STRIKE PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION**<br><br>Judge:      Hon. Charles R. Breyer |

Declaration of John C. Ertman; Case No. CV-13-3663-CRB

I, John C. Ertman, hereby declare, pursuant to 28 U.S.C. § 1746 and under penalty of perjury under the laws of the United States, that the following is true and correct:

1. I am member of the law firm Ropes & Gray LLP, attorneys for Plaintiffs Wells Fargo Bank, National Association, Deutsche Bank Trust Company Americas, and Deutsche Bank National Trust Company. I submit this declaration in opposition to Defendants' *ex parte* motion (the "Motion") to strike Plaintiffs' motion for a preliminary injunction (Dkt. No. 8) (the "PI Motion"), in order to present certain materials relevant to Plaintiffs' opposition to the *ex parte* Motion, and to set forth the chronology of the meet and confer discussions between counsel for the parties.

2. Richmond, California ("Richmond") has been the target of significant lobbying efforts against implementation of its plan to seize mortgage loans through eminent domain, where the same constitutional and other legal concerns raised in Plaintiffs' Complaint and PI Motion were addressed to Richmond. One example, attached hereto as Exhibit A , is a copy of a letter with attached legal memorandum sent by Timothy Cameron, Esq., Managing Director of SIMFA, to the Honorable Gayle McLaughlin on March 13, 2013.

3. Despite the foregoing, Defendants have made numerous public statements regarding their intention to seize residential mortgage loans through eminent domain (the "Loan Seizure Program").

4. On April 2, 2013, the City Council of Defendant Richmond voted 6-0 (with one member absent) at a public meeting to approve entering into an Advisory Services Agreement ("ASA") with Defendant Mortgage Resolution Partners LLC ("MRP"). Attached hereto as Exhibit B is a copy of minutes from that City Council meeting, available at http://www.ci.richmond.ca.us/Archive.aspx?AMID=31.

5. The ASA provides that MRP will advise Richmond on "acquiring mortgage loans through the use of eminent domain." Attached hereto as Exhibit C is a copy of an executed version of the ASA.

6. Prior to the City Council's vote approving the ASA, Richmond City Manager Bill Lindsay discussed MRP's program and the eminent domain process with the City Council, explaining that if there was not a "negotiated purchase" of a targeted mortgage, "the City would be

1

Declaration of John C. Ertman; Case No. CV-13-3663-CRB

asked to use eminent domain to acquire the mortgage." *See* Recording of Richmond City Council Meeting at 4:17:38–4:19:40 (Apr. 2, 2013), available at http://richmond.granicus.com/MediaPlayer.php?view_id=11&clip_id=3218).

7. Attached hereto as Exhibit D is an opinion editorial co-authored by Richmond Mayor Gayle McLaughlin, from *The San Francisco Chronicle*, dated June 17, 2013, titled "Richmond's Plan to Battle Foreclosures," in which the authors write: "Wall Street banks and their lobbyists are lining up to oppose this project and pressure communities to back off. The same Wall Street banks that targeted our communities with predatory loans are now trying to scare and bully us. But we are not backing down. We have a local solution to a national crisis Wall Street created. We are moving forward to do what's best for Richmond, not Wall Street." (available at http://www.sfchronicle.com/opinion/openforum/article/Richmond-s-plan-to-battle-foreclosures-4604029.php).

8. In a June 18, 2013, San Francisco CBS news segment, the Mayor of Richmond said in an interview "I expect the implementation to be moving forward very quickly, ready to go in days." *See* KPIX 5, CBS San Francisco News broadcast, available at http://sanfrancisco.cbslocal.com/2013/06/18/richmond-considers-eminent-domain-as-a-path-to-home-loan-restructuring/

9. In a July 15, 2013 radio interview, the Mayor of Richmond stated that "If the lender will not sell the house at fair market value, . . . we, the City, take the mortgage through eminent domain." *See* KALW Local Public Radio broadcast, available at http://kalw.org/post/richmond-mayor-gayle-mclaughlin-citys-bold-plan-stem-foreclosures.

10. Attached hereto as Exhibit E is a copy of an article by Shaila Dewan, from *The New York Times*, dated July 29, 2013, titled "A City Invokes Seizure Laws to Save Homes" (accessed at http://www.nytimes.com/2013/07/30/business/in-a-shift-eminent-domain-saves-homes.html?_r=1&). According to the article, the Mayor of Richmond stated that "We're not willing to back down on this."

11. Attached hereto as Exhibit F is a copy of an article by Michael B. Marois, from Bloomberg.com, dated August 2, 2013, titled "California Mayor Attacks 'Greed' With Eminent

2

Declaration of John C. Ertman; Case No. CV-13-3663-CRB

1 Domain Bid" (accessed at http://www.bloomberg.com/news/2013-08-02/california-mayor-attacks-greed-with-eminent-domain-bid.html). According to the article, the Mayor of Richmond emailed a statement to Bloomberg that read: "The banks and financial institutions are not helping. . . . Their greed caused the problem and they have no solution for cities like Richmond. . . . Cities like Richmond have a right and obligation to utilize such a program for the public benefit."

12. Attached hereto as Exhibit G is a copy of an article by Nick Timiraos, from *The Wall Street Journal*, dated August 9, 2013, titled "Richmond Mayor Says Lawsuit Won't Deter Loan Seizures" (accessed at http://blogs.wsj.com/developments/2013/08/09/richmond-mayor-says-lawsuit-wont-deter-loan-seizures/). According to the article, the Mayor of Richmond said she was not deterred by recent events – including the filing of this action – from moving ahead with Richmond's plan to forcibly purchase mortgage loans under eminent domain.

13. Attached hereto as Exhibit H is a copy of an article by Robert Rogers, from *The Contra Costa Times*, dated August 15, 2013, titled "Richmond Mayor, Protesters Turned Away at Wells Fargo Headquarters in San Francisco" (accessed at http://www.contracostatimes.com/west-county-times/ci_23870501/richmond-mayor-protesters-turned-away-at-wells-fargo.) According to the article, on the same day Defendants filed their *ex parte* Motion in which they assert that Plaintiffs' claims are not ripe for review, the Mayor of Richmond "said that the city will not be dissuaded from its plan to use eminent domain to seize underwater mortgages," and stated "I am absolutely not backing down."

14. As set forth in Plaintiffs' PI Motion papers, the vast majority of the loans targeted by Defendants are performing loans. Because the trusts are organized as Real Estate Mortgage Investment Conduits, or "REMICs" the trustees are prohibited from selling them. *See* 6 U.S.C. §860F.

15. Attached hereto as Exhibit I is an MRP FAQ Sheet, which contains the following Question and Answer: Q: "Why do you need eminent domain? Why don't you just buy loans in the market?" A: "*[W]e could offer to buy their underwater loans, but their trust agreements forbid them to voluntarily sell the loans. Eminent domain allows us to purchase those loans . . . .*") (emphasis added).

3
Declaration of John C. Ertman; Case No. CV-13-3663-CRB

16.     Recently, Plaintiffs sent letters in response to the offer letters issued by Richmond, which decline the offers based on the fact that the loans cannot be sold, among other reasons. Attached hereto as Exhibit J is one such letter, dated August 13, 2013.

17.     On August 7, 2013, Plaintiffs commenced this action with the filing of a Complaint against Richmond and MRP.  (Dkt. No. 1).

18.     On August 8, 2013, Plaintiffs filed the PI Motion, which seeks to enjoin Defendants from taking any further action to implement the Loan Seizure Program with respect to any mortgage loans held in residential mortgage-backed securitization trusts for which Plaintiffs serve as trustees (the "RMBS Trusts"), including taking any steps under state law to seize the loans through eminent domain.  (Dkt. No. 8).

19.     On August 8, 2013, Plaintiffs sent a letter to Defendants that asked whether they were willing to immediately suspend further implementation of the Loan Seizure Program concerning the RMBS Trusts pending adjudication of the PI Motion.  Attached hereto as Exhibit K is a copy of that letter.

20.     On August 12, 2013, during a meet-and-confer teleconference with Defendants' counsel, we again asked whether Defendants would be willing to halt the Loan Seizure Program pending adjudication of the PI Motion, including holding off on initiating state court eminent domain proceedings.  Defendants' counsel would not confirm whether Defendants were willing to halt the Program.

21.     On August 13, 2013, Defendants' counsel sent us a letter in which they assert that the PI Motion is not ripe for review and that requested that Plaintiffs withdraw the PI Motion.  Again, Defendants' counsel did not confirm that Defendants were willing to halt the Loan Seizure Program pending adjudication of the PI Motion, but instead stated only that Richmond would agree to give 15 days advance notice, *as required under California statutory law*, before holding a hearing on adopting a resolution of necessity with respect to loans held by the RMBS Trusts.  Attached hereto as Exhibit L is a copy of that letter.

22.     On August 14, 2013, I sent a letter to Defendants' counsel confirming that they are unwilling to halt the Loan Seizure Program pending adjudication of the PI Motion.  Attached hereto

4

Declaration of John C. Ertman; Case No. CV-13-3663-CRB

1 | as Exhibit M is a copy of that letter. The Defendants did not respond to my August 14, 2013 letter,
2 | except to file the instant *ex parte* motion on the following day.
3
4 | Date: New York, New York
5 |       August 16, 2013
6 |                                                        /s/ John C. Ertman
7 |                                                        _____
                                                           John C. Ertman
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

5
Declaration of John C. Ertman; Case No. CV-13-3663-CRB