# EXHIBIT B

<u>EMINENT DOMAIN – Information Pamphlet</u>

## I.     Introduction

Eminent domain is the power of the government to purchase private property for a "public use" so long as the property owner is paid "just compensation." Whenever possible, the City of Richmond tries to avoid use of the eminent domain power, exercising it only when it is necessary for a public project. The decision to acquire private property for a public project is made by the City of Richmond only after a thorough review of the project, which often includes public hearings.

This pamphlet provides general information about the eminent domain process and the rights of the property owner in that process.[1]

- **What is a "public use"?**

A "public use" is a use that confers public benefits, like the provision of public services or the promotion of public health, safety, and welfare. Public uses include a wide variety of projects such as street improvements, construction of water pipelines or storage facilities, construction of civic buildings, redevelopment of blighted areas, and levee improvements to increase flood protection. Some public uses are for private entities, such as universities, hospitals and public utilities, which serve the public.

- **What is "just compensation"?**

Just compensation is the **fair market value** of the property being acquired by the government. The state law definition of fair market value is "the highest price on the date of valuation that would be agreed to by a seller, being willing to sell but under no particular or urgent necessity for so doing, nor obliged to sell, and a buyer, being ready, willing, and able to buy but under no particular necessity for so doing, each dealing with the other with full knowledge of all the uses and purposes for which the property is reasonably adaptable and available."

## II.    The Eminent Domain Process and the Property Owner's Rights

The eminent domain process begins with a public use project. When selecting a project location, the goal is to render the greatest public good and the least private

---

[1] **This pamphlet reflects the current law as of January 1, 2008. However, the information in this pamphlet is not, nor should it be construed as, legal advice. <u>Additionally, some sections of this pamphlet are applicable only to the acquisition of real property and may not be applicable in other situations.</u> You should consult with qualified legal counsel regarding your specific situation rather than relying on this pamphlet as legal advice. The statements in this pamphlet are a general summary of the eminent domain process and are not binding on the City of Richmond.**

injury or inconvenience. If it is determined that all or a portion of your property may be necessary for a public use project, the City of Richmond will begin the appraisal process to determine the property's fair market value.

- **How is the fair market value of my property determined?**

The City of Richmond will retain an appraiser to appraise your property. In the case of real property, the appraiser will invite you to accompany him or her during an inspection of your property. You may give the appraiser any information about improvements and any special features that you believe may affect the value of your property. It is in your best interest to provide the appraiser with all the useful information you can in order to ensure that nothing of value will be overlooked. If you are unable to meet with the appraiser, you may wish to have a person who is familiar with your property meet with the appraiser instead.

After the inspection, the appraiser will complete an appraisal that will include the appraiser's determination of your property's fair market value and the information upon which the fair market value is based. The appraiser will provide the City of Richmond with the appraisal. The City of Richmond will then make a written offer to purchase the property. The offer will also include a summary of the appraisal. The offer will be for no less than the amount of the appraisal.

- **What factors does the appraiser consider in determining fair market value?**

Each parcel of real property is different and, therefore, no single formula can be used to appraise all properties. Among the factors an appraiser typically considers in estimating fair market value are:
    - The location of the property;
    - The age and condition of improvements on the property;
    - How the property has been used;
    - Whether there are any lease agreements relating to the property;
    - Whether there are any environmental issues, such as contaminated soil;
    - Applicable current and potential future zoning and land use requirements;
    - How the property compares with similar properties in the area that have been sold recently;
    - How much it would cost to reproduce the buildings and other structures, less any depreciation; and
    - How much rental income the property produces, or could produce if put to its highest and best use.

If the property to be appraised is not real property, the appraiser would consider factors commonly considered in determining the market value of that type of property.

- **Will I receive a copy of the appraisal?**

The City of Richmond will provide you with its purchase offer, a summary of the appraiser's opinion, and the basis for the City of Richmond's offer. Among other things, the offer letter will include:
- A general statement of the City of Richmond's proposed use for the property;
- An accurate description of the property to be acquired;
- A list of the improvements covered by the offer;
- The amount of the offer; and
- The amount considered to be just compensation for each improvement which is owned by a tenant and the basis for determining that amount.

However, the City of Richmond is only required to show you a copy of the full appraisal if your property is an owner-occupied residential property with four or fewer residential units. Otherwise, the City of Richmond may, but is not required, to disclose its full appraisal during negotiations (though different disclosure requirements apply during the litigation process if the issue of fair market value goes to court).

- **Can I have my own appraisal done?**

Yes. You may decide to obtain your own appraisal of the property in negotiating the fair market value with the City of Richmond. For real property, at the time of making its initial offer to you, the City of Richmond will offer to reimburse you the reasonable costs, not to exceed $5,000, of an independent appraisal of your property. To be eligible for reimbursement, the independent appraisal must be conducted by an appraiser licensed by the State Office of Real Estate Appraisers.

- **What advantages are there in selling my property to the City of Richmond?**

A real estate transaction with the City of Richmond is typically handled in the same way as the sale of private property. However, there may be a financial advantage to selling to the City of Richmond.

- You will not be required to pay for real estate commissions, title costs, preparation of documents, title policy or recording fees required in closing the sale. The City of Richmond will pay all these costs.

- Although the City of Richmond cannot give you tax advice or direction, you might also be eligible for certain property and income tax advantages. You should check with the Internal Revenue Service (IRS) for details or consult your personal tax advisor.

- **If only a portion of my property is taken, will I be paid for the loss to my remaining property?**

In general, when only a part of your property is needed, every reasonable effort is made to ensure you do not suffer a financial loss to the "remainder" property. The City of Richmond will pay you the fair market value of the property being taken as well as compensation for any loss in value to your remaining property that is not offset by the benefits conferred by the project. The compensation for the loss in value to your remaining property is often referred to as "severance damages."

Also, if any remaining part is of such a size, shape, or condition as to be of little market value, the City of Richmond will offer to acquire that remaining part (or remnant) from you, if you so desire.

- **Will I be compensated for loss of goodwill to my business?**

If you are the owner of a business that is conducted on the property being acquired, you may have a right to compensation for lost business goodwill if the loss is caused by the acquisition of the property. "Goodwill" consists of the benefits that accrue to a business as a result of its location, reputation for dependability, skill or quality, and any other circumstances resulting in probable retention of old or acquisition of new patronage.

- **What will happen to the loan on my property?**

Where the City of Richmond is acquiring the entire property, generally the compensation payable to the owner is first used to satisfy outstanding loans or liens as in a typical real estate transaction. Where less than the entire property is being acquired, whether outstanding loans or liens are paid from the compensation will depend on the particular facts and circumstances.

- **Do I have to sell at the price offered?**

No. If you and the City of Richmond are unable to reach an agreement on a mutually satisfactory price, you are not obligated to sign an offer to sell or enter into a purchase agreement.

- **If I agree to accept the City of Richmond's offer, how soon will I be paid?**

If you reach a voluntary agreement to sell your property or an interest in the property to the City of Richmond, payment will be made at a mutually acceptable time. Generally, this should be possible within 30 to 60 days after a purchase/sale contract is signed by all parties.

- **What happens if we are unable to reach an agreement on the property's fair market value?**

The City of Richmond, to the greatest extent practicable, will make every reasonable effort to acquire your property by negotiated purchase. If, however, the negotiations are unsuccessful, the City of Richmond may either file an eminent domain action in a court located within the same county where your property is located or it may decide to abandon its intention to acquire the property. If the City of Richmond abandons its intention to acquire, it will promptly notify you.

If the City of Richmond proceeds with eminent domain, the first step is for City of Richmond staff to request authority from the City Council to file a condemnation action. The approval from the City Council is called a "Resolution of Necessity." In considering whether condemnation is necessary, the City Council must determine whether the public interest and necessity require the project, whether the project is planned or located in the manner that will be most compatible with the greatest public good and the least private injury, and whether your property is necessary for the project. You will be given notice and an opportunity to appear before the City Council when it considers whether to adopt the Resolution of Necessity. You may want to call an attorney or contact an attorney referral service right away. You or your representatives can raise any objections to the Resolution of Necessity and the condemnation either orally before the City Council or in writing to the City Council.

If the City Council adopts the Resolution of Necessity, the City of Richmond can file a complaint in court to acquire title to the property upon payment of the property's fair market value. The City of Richmond is the plaintiff. Anyone with a legal interest in the property, generally determined from a title report on the property (including tenants or mortgage holders), are named as defendants. Often, the City of Richmond will also deposit the amount the City of Richmond believes is the "probable amount of compensation" with the State Treasurer where the complaint is filed. A deposit must be made if the City of Richmond is seeking to acquire possession of the property before agreement is reached on the fair market value.

- **Can the City of Richmond acquire possession of my property before the property's fair market value is determined in the eminent domain lawsuit?**

In some cases, the City of Richmond may decide it needs possession of the property before the property's fair market value is finally determined. In such a case, the City of Richmond must apply to the court for an "order for possession" to allow it to take possession and control of the property prior to resolution of the property's fair market value. The City of Richmond is required to schedule a hearing with the court on the proposed order for possession and to give you notice of the hearing. Notice must generally be sent at least 90 days before the hearing date if the property is occupied and 60 days before the hearing date if the property is unoccupied. A judge will decide whether the order for possession should be granted. As noted above, the City of Richmond must deposit with the State Treasurer the probable amount of just compensation in order to obtain possession of the property.

- **Can I oppose the motion for an order for possession?**

Yes. You may oppose the motion in writing by serving the City of Richmond and the court with your written opposition within the period of time set forth in the notice from the City of Richmond.

- **Can I rent the property from the City of Richmond?**

If the City of Richmond agrees to allow you or your tenants to remain on the property after the City of Richmond acquires possession, you or the tenants will be required to pay a fair rent to the City of Richmond. Generally, such rent will not be more than that charged as rent for the use of a property similar to yours in a similar area.

- **Can I withdraw the amount deposited with the State Treasurer before the eminent domain action is completed, even if I don't agree that the amount reflects the fair market value of my property?**

Yes. Subject to the rights of any other persons having a property interest (such as a lender, tenant, or co-owner), you may withdraw the amount deposited with the State Treasurer before the eminent domain action is completed. If you withdraw the amount on deposit, you may still seek a higher fair market value during the eminent domain proceedings, but you may not contest the right of the City of Richmond to acquire the property, meaning you cannot contest that the acquisition of your property is for a public purpose or is otherwise improper.

You also have the right to ask the court to require the City of Richmond to increase the amount deposited with the State Treasurer if you believe the amount the City of Richmond has deposited less than the "probable amount of compensation."

- **Can I contest the condemning agency's acquisition of the property?**

Yes. Provided you have not withdrawn the amount deposited, you can challenge in court the City of Richmond's right to acquire or condemn the property.

- **What happens in an eminent domain trial?**

The main purpose of an eminent domain trial is to determine the fair market value of your property, including compensable interests such as lost business goodwill caused by the taking or severance damages. The trial is usually conducted before a judge and jury. You (and any others with interests in the property) and the City of Richmond will have the opportunity to present evidence of value, and the jury will determine the property's fair market value. In cases where the parties choose not to have a jury, the

judge will decide the property's fair market value. Generally, each party to the litigation must disclose its respective appraisals to the other parties prior to trial.

If you challenge the City of Richmond's right to acquire the property, the eminent domain trial will also determine whether or not the City of Richmond has the legal right to acquire the property. In such cases, the judge (not the jury) will make this determination before any evidence is presented concerning the property's fair market value.

At the end of the trial, the judge will enter a judgment requiring the City of Richmond to pay fair market value. Once the City of Richmond pays the amount listed in the judgment, the judge will enter a final order of condemnation. The City of Richmond will record the final order with the County Recorder, and title to the property will then pass to the City of Richmond

- **Am I entitled to interest?**

Anyone receiving compensation in an eminent domain action is generally entitled to interest on that compensation from the date the condemning agency takes possession of the property until the person receiving the compensation has been fully paid. The rate and calculation of the interest is determined under formulas in State law.

- **Will the City of Richmond pay my attorneys' fees and costs.**

In an eminent domain action, you are entitled to be reimbursed by the condemning agency for your court costs such as court filing fees. In some circumstances, you may also be entitled to be reimbursed by the condemning agency for your attorneys' fees in the lawsuit. Whether you will be entitled to receive reimbursement for your attorneys' fees will depend on the particular facts and circumstances of the case and the offers and demand for compensation made in the action.

- **Will I receive assistance with relocation?**

Any person, business, or farm operation displaced as a result of the property acquisition is typically entitled to relocation advisory and financial assistance for eligible relocation expenses, such as moving expenses. The amount of relocation compensation is determined on a case-by-case basis in accordance with prescribed law. Relocation benefits are handled separate and apart from the determination of the property's fair market value and are not part of the eminent domain process.

### III. Contact Information

We are available to answer your questions and to assist you in understanding the acquisition program and the eminent domain process. Should you desire further

information, please contact the City of Richmond using the contact information contained in the accompanying offer letter.