ROCKY C. TSAI (SBN 221452)
(rocky.tsai@ropesgray.com)
**ROPES & GRAY LLP**
Three Embarcadero Center
San Francisco, CA 94111-4006
Telephone: (415) 315-6300
Facsimile: (415) 315-6350

Attorneys for Plaintiffs Wells Fargo Bank, N.A.,
as Trustee, *et al.*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| WELLS FARGO BANK, NATIONAL ASSOCIATION, as Trustee, *et al.* <br><br> Plaintiffs, <br><br> v. <br><br> CITY OF RICHMOND, CALIFORNIA, a municipality, and MORTGAGE RESOLUTION PARTNERS LLC; <br><br> Defendants. | Case No. CV-13-3663-CRB <br><br> **DECLARATION OF JOHN C. ERTMAN IN FURTHER SUPPORT OF PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION AND IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS** <br><br> Judge: Hon. Charles R. Breyer <br> Date: September 13, 2013 <br> Time: 10:00 a.m. |

Reply Declaration of John C. Ertman; Case No. CV-13-3663-CRB

1    I, John C. Ertman, Esq., hereby declare, pursuant to 28 U.S.C. § 1746 and under penalty of

2    perjury under the laws of the United States, that the following is true and correct:

3    1.    I am member of the law firm Ropes & Gray LLP, attorneys for Plaintiffs Wells Fargo

4    Bank, National Association, Deutsche Bank Trust Company Americas, and Deutsche Bank National

5    Trust Company. I submit this declaration in further support of Plaintiffs' motion for a preliminary

6    injunction (Dkt. No. 8) (the "PI Motion") and in opposition to Defendants' Motion to Dismiss

7    Plaintiffs' Complaint (Dkt. No. 38) (the "Dismissal Motion"), in order to present certain materials

8    relevant to the Court's adjudication of these matters.

9    **A. Documents Received from the City of Richmond**

10    2.    In a letter dated June 25, 2013, Michael H. Leifer, Esq., submitted a Public Record

11    Act request (the "PRA Request") pursuant to Government Code section 6250 *et seq.* to the City of

12    Richmond, California ("Richmond" or the "City"), to obtain copies of documents regarding

13    Mortgage Resolution Partners' ("MRP") and Richmond's program to seize residential mortgage

14    loans through eminent domain (the "Loan Seizure Program"). Attached hereto as Exhibit A is a true

15    and correct copy of that letter.

16    3.    In a letter dated July 2, 2013, Carlos A. Privat, Assistant City Attorney for the City of

17    Richmond, responded to Mr. Leifer that the City Attorney's Office would make the records available

18    electronically no later than August 1, 2013. Attached hereto as Exhibit B is a true and correct copy

19    of that letter.

20    4.    Mr. Leifer received the requested records from Richmond and subsequently made

21    them available to Plaintiffs and Ropes & Gray LLP. Attached hereto as Exhibits C through Q are a

22    number of the documents obtained through the PRA Request, which are described in the following

23    paragraphs.

24    5.    Attached hereto as Exhibit C is an August 16, 2012, e-mail from Susan Boreliz of

25    MRP to Gayle McLaughlin, Mayor of the City of Richmond, and others, providing "background"

26    about MRP. The e-mail states that: "MRP is an organization formed to advise local governments on

27    how to remedy the foreclosure crisis through the creation of private-public partnerships utilizing the

28    constitutional power of eminent domain."

1

1       6.    Attached hereto as Exhibit D is an August 23, 2012, e-mail from Bruce Goodmiller,

2   the City Attorney for the City of Richmond, forwarding an e-mail from MRP (and its attachments) to

3   multiple City employees, including City Manager Lindsay.  Included among the attached marketing

4   materials for MRP's Loan Seizure Program is a document entitled "Public Purpose" that appears to

5   be a draft "resolution on necessity" for San Bernardino County.

6       7.    Attached hereto as Exhibit E is a December 5, 2012, e-mail from Mayor McLaughlin

7   to City employees explaining that MRP is "working with cities and counties *to exercise powers of*

8   *eminent domain* to purchase 'underwater mortgages.'  It's unique in that it's not purchase of the

9   house but purchase of the mortgage.  Then, after the city or county has the mortgage in its hands, it

10   can refinance the loan at more favorable terms for the borrower."  (emphasis added).

11       8.    Attached hereto as Exhibit F is a December 12, 2012, e-mail from Bill Higgins of

12   MRP to City Manager Lindsay attaching MRP marketing materials that were discussed during a

13   meeting between MRP and the City on the previous day.  Included in the marketing materials was a

14   presentation entitled "Saving Homes, Saving Cities Solving the Mortgage Crisis Locally."  The

15   presentation states (p. 8) that the "Method of PLS Principal Reduction" requires the use of the City's

16   "constitutional power of eminent domain," because "[s]ecuritization agreements and tax laws

17   prohibit the sale of PLS mortgages except when the mortgages are condemned."  The presentation

18   also states (p. 12) that of the $30,000 "gain on each loan," the City will receive $9,500.

19       9.    Attached hereto as Exhibit G is an April 3, 2013, e-mail from City Manager Lindsay

20   to Graham Williams of MRP regarding the City Council vote to approve the Advisory Services

21   Agreement between the City and MRP.  The e-mail states that the City Council unanimously

22   approved the agreement and "[t]o the extent that any of the Councilmembers had concerns, they had

23   to do with the new mortgages that property owners would enter into (usurious interest rates, etc.) . . .

24   . In any case, they would like more information about this, although they gave approval for the

25   program to start."

26       10.    Attached hereto as Exhibit H is an April 8, 2013, e-mail from Graham Williams of

27   MRP to City employees, including City Manager Lindsay, attaching a timeline of the steps of the

28   Loan Seizure Program (a "Gantt Chart for California JPA Initial Program").  The timeline includes

2

the following steps, among others: "MRP, on behalf of JPA, makes offers to servicers"; "MRP prepares [the] Resolution of Necessity"; "JPA approves RON"; "JPA Files Motion"; "Eminent Domain Trial"; and "Loans Acquired, WAM deposits purchase price."

11.      Attached hereto as Exhibit I is an April 8, 2013, e-mail from Graham Williams of MRP to City employees, including City Manager Lindsay, attaching an annotated list of steps in the Loan Seizure Program, entitled the "MRP High Level Project Plan Template," which appear to be generally consistent with the timeline discussed above.

12.      Attached hereto as Exhibit J is an April 10, 2013, e-mail from David Sharples of the Alliance of Californians for Community Empowerment ("ACCE") to Mayor McLaughlin attaching talking points for a press conference in which the Mayor had agreed to participate. Mr. Sharples stated: "We don't want to emphasize too much the eminent domain issue because we know it is very controversial and we don't really want to tip our hands to the opposition."

13.      Attached hereto as Exhibit K is an April 22, 2013, e-mail from Graham Williams of MRP to City Manager Lindsay and City Housing Director Patrick Lynch with the subject: "Foreclosure prevention progress report and next steps." Mr. Williams states that: "We have completed the discovery of underwater PLS homeowners in your city. This list is available to you upon request. The next step in our process is to prepare for your approval an offer to buy these mortgages, we expect to deliver the proposed offer to you in the next 3 weeks. If you approve this offer then we intend to present it along with all other offers in one package to the 20 servicers of these mortgages."

14.      Attached hereto as Exhibit L is an April 30, 2013, e-mail from City Manager Lindsay to Graham Williams of MRP, noting a meeting with "representatives of Bank of America and Wells Fargo" and stating that: "I have not heard any new arguments presented that suggest that we should not move forward with your program."

15.      Attached hereto as Exhibit M is a May 14, 2013, e-mail from Graham Williams of MRP to City Manager Lindsay and Housing Director Lynch stating that he is attaching "a list of [R]ichmond mortgages which we feel should be the first to be purchased. They are 731 current, underwater, PLS mortgages without second trust deeds." (The email's attachment is omitted.)

---

3

16.     Attached hereto as Exhibit N is a May 16, 2013, e-mail from David Sharples of ACCE to Councilmembers Beckles, Rogers, Butt, and Myrick, containing an invitation to attend a "Webinar and strategy session on Using Eminent Domain to End the Foreclosure Crisis," where Mayor McLaughlin was one of the featured panelists. Mr. Sharples also attaches a document titled "Eminent Domain as a Tool for Preserving Homeownership, Resetting Mortgages, and Aiding Local Economies, Frequently Asked Questions." That document states: "These homes are not in fact being sold. The loan is being sold, or taken through eminent domain," and "This program is being proposed in response to the current crisis. This use of eminent domain only makes sense, and meets the legal bar of a 'public purpose', because of the large numbers of homeowners who are deeply underwater."

17.     Attached hereto as Exhibit O is a May 17, 2013, e-mail from Graham Williams of MRP to City Manager Lindsay and Housing Director Lynch attaching "corrected slides" from a presentation previously sent to Messrs. Lindsay and Lynch. The slides note that "MRP has arranged the $46 million of financing that is required to implement the initial CARES program in Richmond, CA. More funding is available to Richmond when needed." The slides further note that in the initial phase of the program, $1,623,623 will be "Paid to City," with the "City's Proceed per Resolution" listed as $7,404. The "Funders Return on Capital" is listed as "10%."

18.     Attached hereto as Exhibit P is a June 10, 2013, e-mail from Graham Williams of MRP to Mayor McLaughlin, City Manager Lindsay, and Housing Director Lynch discussing the "next steps for acquiring underwater securitized loans."

19.     Attached hereto as Exhibit Q is a July 22, 2013, e-mail from Mayor McLaughlin to Katy Miessner, a candidate for the Vallejo City Council, stating: "You can certainly tell folks in Vallejo that Richmond is 100 percent on board with this. Here's an article in The Nation about Richmond and our commitment to this program." Mayor McLaughlin also included a link to the article, "To Rescue Local Economies, Cities Seize Underwater Mortgages Through Eminent Domain" by Peter Dreier from *The Nation*.

### B. Public Statements by Richmond Officials

20.     Set forth below are numerous public statements made by Richmond officials concerning the Loan Seizure Program.

1        21.    Prior to the City Council's vote to approve the ASA on April 2, 2013, City Manager

2    Lindsay discussed MRP's program and the eminent domain process with the City Council,

3    explaining that if there was not a "negotiated purchase" of a targeted mortgage, "the City would be

4    asked to use eminent domain to acquire the mortgage." City Manager Lindsay further informed the

5    City Council that, as part of this program, "the City Council would be asked to make a finding that it

6    is in the public interest to actually acquire that mortgage for the purposes of restructuring." After

7    extensive discussion, the City Council unanimously voted 6-0 to approve entering into the

8    partnership with MRP, with one member absent. *See* Recording of Richmond City Council Meeting

9    at 4:17:38–4:19:40 (Apr. 2, 2013), available at

10   http://richmond.granicus.com/MediaPlayer.php?view_id=11&clip_id=3218.

11       22.    Attached hereto as Exhibit R is an opinion editorial co-authored by Mayor

12   McLaughlin and Reverend Marvin Webb, from *The San Francisco Chronicle*, dated June 17, 2013,

13   titled "Richmond's Plan to Battle Foreclosures," in which the authors write: "Wall Street banks and

14   their lobbyists are lining up to oppose this project and pressure communities to back off. The same

15   Wall Street banks that targeted our communities with predatory loans are now trying to scare and

16   bully us. But we are not backing down. We have a local solution to a national crisis Wall Street

17   created. We are moving forward to do what's best for Richmond, not Wall Street." (accessed at

18   http://www.sfchronicle.com/opinion/openforum/article/Richmond-s-plan-to-battle-foreclosures-

19   4604029.php).

20       23.    In a June 18, 2013, San Francisco CBS news segment, Mayor McLaughlin said in an

21   interview "I expect the implementation to be moving forward very quickly, ready to go in days."

22   *See* KPIX 5, CBS San Francisco News broadcast, available at

23   http://sanfrancisco.cbslocal.com/2013/06/18/richmond-considers-eminent-domain-as-a-path-to-

24   home-loan-restructuring/

25       24.    In a July 15, 2013 radio interview, Mayor McLaughlin stated that "If the lender will

26   not sell the house at fair market value, . . . we, the City, take the mortgage through eminent domain."

27   *See* KALW Local Public Radio broadcast, available at http://kalw.org/post/richmond-mayor-gayle-

28   mclaughlin-citys-bold-plan-stem-foreclosures.

25. Attached hereto as Exhibit S is a copy of an article by Shaila Dewan, from *The New York Times*, dated July 29, 2013, titled "A City Invokes Seizure Laws to Save Homes" (accessed at http://www.nytimes.com/2013/07/30/business/in-a-shift-eminent-domain-saves-homes.html?_r=1&). According to the article, Mayor McLaughlin stated that "We're not willing to back down on this."

26. Attached hereto as Exhibit T is a copy of an article by Michael B. Marois, from Bloomberg.com, dated August 2, 2013, titled "California Mayor Attacks 'Greed' With Eminent Domain Bid" (accessed at http://www.bloomberg.com/news/2013-08-02/california-mayor-attacks-greed-with-eminent-domain-bid.html). According to the article, Mayor McLaughlin emailed a statement to Bloomberg that read: "The banks and financial institutions are not helping. . . . Their greed caused the problem and they have no solution for cities like Richmond. . . . Cities like Richmond have a right and obligation to utilize such a program for the public benefit."

27. Attached hereto as Exhibit U is a copy of an article by Nick Timiraos, from *The Wall Street Journal*, dated August 9, 2013, titled "Richmond Mayor Says Lawsuit Won't Deter Loan Seizures" (accessed at http://blogs.wsj.com/developments/2013/08/09/richmond-mayor-says-lawsuit-wont-deter-loan-seizures/). According to the article, Mayor McLaughlin said she was not deterred by recent events -- including the filing of this action – from moving ahead with Richmond's plan to forcibly purchase mortgage loans under eminent domain.

28. Attached hereto as Exhibit V is a copy of an article by Robert Rogers, from *The Contra Costa Times*, dated August 15, 2013, titled "Richmond Mayor, Protesters Turned Away at Wells Fargo Headquarters in San Francisco" (accessed at http://www.contracostatimes.com/west-county-times/ci_23870501/richmond-mayor-protesters-turned-away-at-wells-fargo.) According to the article, on the same day Defendants filed their *ex parte* Motion in which they assert that Plaintiffs' claims are not ripe for review, Mayor McLaughlin "said that the city will not be dissuaded from its plan to use eminent domain to seize underwater mortgages," and stated "I am absolutely not backing down."

**C. Meet and Confer Discussions**

29.     On August 8, 2013, the day after this action was filed and the day the PI Motion was filed, Plaintiffs sent a letter to Defendants asking if they were willing to immediately suspend further implementation of the Loan Seizure Program concerning the RMBS Trusts pending adjudication of the PI Motion.  Attached hereto as Exhibit W is a copy of that letter.

30.     On August 12, 2013, during a meet-and-confer teleconference with Defendants' counsel, counsel for Plaintiffs again asked if Defendants would be willing to halt the Loan Seizure Program pending adjudication of the PI Motion, including holding off on initiating state court eminent domain proceedings.  Defendants' counsel would not confirm whether Defendants were willing to halt the Program.

31.     On August 13, 2013, Defendants' counsel sent us a letter in which they asserted that the PI Motion is not ripe for review and that requested that Plaintiffs withdraw the PI Motion. Again, Defendants' counsel would not confirm that Defendants were willing to halt the Loan Seizure Program pending adjudication of the PI Motion, but instead stated only that Richmond would agree to give 15 days advance notice, *as required under California statutory law*, before holding a hearing on adopting a resolution of necessity with respect to loans held by the RMBS Trusts.  Attached hereto as Exhibit X is a copy of that letter.

32.     On August 14, 2013, I sent a letter to Defendants' counsel confirming that they are unwilling to halt the Loan Seizure Program pending adjudication of the PI Motion.  Attached hereto as Exhibit Y is a copy of that letter.  The Defendants did not respond to my August 14, 2013 letter, except to file their *ex parte* motion to strike the PI motion from the Court's calendar on the following day.

**D.  Other Documents**

33.     On August 7, 2013, the Federal Housing Finance Agency issued a memorandum entitled "Summary of Comments and Additional Analysis Regarding Input on Use of Eminent Domain to Restructure Mortgages."  Attached hereto as Exhibit Z is a copy of that memorandum.

34.     Recently, Plaintiffs sent letters in response to the offer letters issued by Richmond, which decline the offers based on the fact that the loans cannot be sold, among other reasons. Attached hereto as Exhibit AA is one such letter, dated August 13, 2013.

Reply Declaration of John C. Ertman; Case No. CV-13-3663-CRB

1

2

3

4    Date:  New York, New York
          August 29, 2013

5

6                                                    _____
                                                          John C. Ertman
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Reply Declaration of John C. Ertman; Case No. CV-13-3663-CRB